FILED
2021 Jul-22  PM 03:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **SHAYLA MICHELLE NIX,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  4:20-cv-00790- RDP** |
| | } | |
| **ANDREW SAUL,** | } | |
| **COMMISSIONER OF SOCIAL** | } | |
| **SECURITY,** | } | |
| | } | |
| **Defendant.** | | |

## MEMORANDUM OF DECISION

Plaintiff Shayla Michelle Nix brings this action pursuant to Section 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI").  *See also* 42 U.S.C. §§ 405(g) and 1383(c).  Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I.      Proceedings Below

Plaintiff Shayla Nix filed her application for a period of disability, DIB, and SSI on August 15, 2017. (Tr. 156-57, 163-66). Her applications were denied initially and upon review. (Tr. 77-86).  On January 18, 2018, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 87).  Plaintiff's request was granted and a hearing was held on July 1, 2019 before ALJ Doug Gabbard.  (Tr. 118).

In his decision dated August 7, 2019, the ALJ determined that Plaintiff had not met the requirements for disability within the meaning of sections 216(i) and 223(d) of the Act, and

therefore was not disabled under section 1614(a)(3)(A) of the Act. (Tr. 25). After the appeals council denied Plaintiff's request for review of the ALJ's decision, that decision became final and therefore a proper subject of this court's appellate review. (Tr. 12-25).

At the time of the hearing, Plaintiff was 40 years old, separated, and living with her mother. (Tr. 20, 36, 197). Plaintiff received her GED but has no college hours. (Tr. 37). Plaintiff has past work experience as a zip lock operator, pipeline helper, parts department person, and security guard. (Tr. 40). Plaintiff alleges she has been disabled since September 30, 2013, due to limitations imposed by depression, bipolar, anxiety, and obsessive disorder. (Tr. 20).

In completing her Function Report on September 6, 2017, Plaintiff asserts that after waking up on a "good morning" she makes coffee, feeds and walks her dog, and either watches TV, reads, or colors. (Tr. 197). Her hobbies include playing pool, arts and crafts, and playing with animals. (Tr. 201). She also likes to take walks and fish. (Tr. 43). Some days she goes to the cemetery to maintain her father and daughter's graves. (Tr. 198). Plaintiff uses a pill container to help her remember to take her medication, and can make sandwiches, frozen meals, and cook vegetable soup. (Tr. 199). She is able to do most chores around the house, wash dishes, and cleans her room without encouragement. (*Id.*). Plaintiff will go outside daily to walk or drive alone because she doesn't like anyone with her. (Tr. 200). She goes out once a week shopping for necessities. (*Id.*). She is able to pay bills, count change, handle a savings account, and use a checkbook/money orders because she states she is able to follow directions. (*Id.*).

If not having a "bad day" and feeling well in the morning, she drinks her coffee and then goes back to bed because she does not want to be around anyone. (Tr. 197). Plaintiff does not have many social activities besides going to "cold springs to get water" by herself because she doesn't

want any company and would rather be by herself. (Tr. 201). Some nights she is unable to sleep because of racing thoughts. (Tr. 198).

Plaintiff alleges that her illnesses affect her talking, hearing, seeing, memory, concentration, understanding, ability to follow instructions, and ability to get along with others. (Tr. 202). She claims that she sometimes talks fast without making any sense, hears voices in her head, and gets nervous around people. (*Id.*). She has no trouble walking without rest, says she can pay attention for as long as she needs to, and is good at following written instructions, and "ok" at following oral instructions. (*Id.*). Authority figures can scare her and in some situations she has been fired or laid off because she hasn't gotten along with others. (Tr 203). Plaintiff stated she "always quit that job and moved on to another one." (*Id.*). However, Plaintiff maintains that she handles stress "very well" and does not have much of a problem with change as it primarily depends on whether the change is good or bad. (*Id.*).

On September 10, 2016 Plaintiff presented to CED Medical Center with a history of major depression and panic disorder. (Tr. 357). Plaintiff stated that she was unable to hold a job because she was nervous around people, her husband of ten years had filed for divorce, and at that time she was living with her mother, with whom she did not get along very well. (*Id.*). On her mental health status examination her mood and affect were depressed and anxious, her insight and judgment were fair, her thought process was circumstantial, her thought content was within normal limits, and her behavior was agitated. (*Id.*). Plaintiff's medications were listed as Celexa, Vistaril, Valium, Neurontin, and Trazodone. (Tr. 357).

On December 27, 2017, Dr. Mary Arnold conducted a psychological evaluation of Plaintiff. (Tr. 361). Dr. Arnold reported that Plaintiff's cognitive functioning appeared to be normal, she had no trouble with math or recall, her fount of information was good, and her

reasoning, processing, and judgment were normal. (*Id*.). In addition, Plaintiff had no trouble holding a normal conversation, she performed activities of daily living, and walked daily. (*Id*.). Her IQ was estimated to be in the low average range and it was noted that she was considered to be a complaint informant. (*Id*.).

On May 12, 2017, Plaintiff returned to CED Mental Health with continued symptoms of depression and panic disorder.  (Tr. 354).  She expressed her depression was "very bad," but that her anxiety "comes and goes." (*Id*.). She stated that taking the Valium prescribed to her was helping some, and Trazodone was helping her sleep on average four hours each night. (*Id*.). Though Plaintiff was prescribed the highest dose of Celexa, it was noted that she was still depressed. (*Id*.). Upon examination, her insight and judgment were good, her thought process was logical, her thought content was normal within appropriate limits, her attention and concentration was adequate, and her behavior was appropriate. (*Id*.). At the end of the visit her medications were changed. (*Id.*).

On October 4, 2017, State Agency Psychologist Robert Estock reviewed Plaintiff's records and concluded that Plaintiff would be able to concentrate and attend to simple tasks for two hours and would need all customary rests and breaks. (Tr. 73). He also found Plaintiff would benefit from a flexible schedule because she likely would be absent one to two days per month, and she may need a well-spaced work environment with a few familiar coworkers to minimize stress. Additionally, she could tolerate ordinary work pressures but should avoid excessive workloads, quick decision making, rapid changes, and multiple demands. (*Id.*). Dr. Estock further provided that Plaintiff's interaction with the public should be casual, criticism or feedback should be given in a non-confrontational and supportive manner, and that she is likely to do her best working with a small number of familiar coworkers. (*Id.*).

On November 19, 2018, Dr. Feist completed a mental health source statement. (Tr. 453). Dr. Feist opined that Plaintiff could not maintain attention, and that she could not concentrate or maintain pace for periods of at least two hours. (*Id.*). Further, Dr. Feist found that Plaintiff could not perform activities within a schedule and could not be punctual within customary tolerances. (*Id.*). He continued that Plaintiff could not sustain an ordinary routine without special supervision, could not adjust to routine and infrequent work changes, could not maintain socially appropriate behavior, or adhere to basic standards of neatness or cleanliness. (*Id.*). Dr. Feist concluded that in a 30-day period, Plaintiff would miss 25 days due to her psychological symptoms and that during an 8 hour workday, she would be off task 80% of the time. (*Id.*). During the hearing, Plaintiff testified that, after a consultation with Dr. Feist, he indicated to her that her medications were causing some problems such as insomnia, dizziness, knowledge of mood changes, thoughts of suicide, hallucinations and seizures, and afterwards he changed her medications. (Tr. 47). Since that consultation, her medications have changed a few times. (Tr. 48).

On June 4, 2018, during a therapy session at CED Mental Health, Plaintiff reported that she was experiencing hallucinations after the death of her father. (Tr. 705). Though she was reported as oriented to person, time, and situation, she also stated that she was feeling lonely and that her family was fighting about her father's will. (*Id.*). Her mood was reported as dysphoric, her affect was constricted, and she mentioned that she began reading her Bible as a coping mechanism. (*Id.*).

On November 4, 2018, during another therapy session at CED Mental Health, Plaintiff reported that she was feeling overwhelmed after her mother and grandmother were diagnosed with cancer. (Tr. 704). She reported that she had no income, she was semi-homeless, and had thoughts

of suicide but denied any plans. (*Id*.). Her mood was noted as dysphoric and tearful, her affect was normal, and she denied any additional hallucinations. (*Id*.).

On June 19, 2019, Plaintiff returned to CED Mental Health Center and presented with a history of major depressive disorder and agoraphobia, with a panic disorder. (Tr. 733). She stated she was doing well, and that she was starting to feel better. (*Id*.). During her mental health examination, her appearance was noted as appropriate, her body movement was within normal limits, behavior was cooperative, affect was appropriate, and her motor activity was within normal limits. (*Id*.). Plaintiff displayed no self-abuse, or suicidal or aggressive thoughts. (*Id*.). Her thought process and intellectual functioning appeared to be within normal limits, her intelligence was average, and her insight and judgment were fair. (*Id*.).

During her July 1, 2019 hearing before the ALJ, Plaintiff testified that she was continuing to go to her mental health appointments and since she had started on a new depression medication, she thought it was helping her. (Tr. 41). Plaintiff also testified that during the day, when not going through paperwork, she slept. (Tr. 42). When asked by the ALJ if she was "hearing things other people don't hear or seeing things that other people don't see," Plaintiff replied in the affirmative. (Tr. 46). Plaintiff also admitted to the ALJ that she would sometimes lie to Dr. Feist and "tell him that everything's okay." (Tr. 50).

At the conclusion of the hearing, vocational expert Diana Kizer opined that Plaintiff's past work would not be possible given her current RFC, but that there were other jobs in the national economy that Plaintiff could perform, such as a cleaner II or a floor waxer. (Tr. 53).

## II.   ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  20 C.F.R.

§ 404.1520(a)(4)(i). "Substantial gainful activity" is defined as activity that is both "substantial" and "gainful." 20 C.F.R. § 1572.  "Substantial" work activity is work that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful" work activity is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in activity that meets both of this criteria, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limit the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If such criteria are met, the claimant is declared disabled.  20 C.F.R.  § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence,

in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff meets the insured status requirements of the Act through September 30, 2013, and has not engaged in substantial gainful activity since September 30, 2013, her alleged onset date. (Tr. 17). Further, the ALJ found that Plaintiff had no severe impairments prior to her date last insured, and after her last insured date Plaintiff had the following severe impairments: depression, bipolar, anxiety and obsessive disorder. (*Id.*). The ALJ then found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18). In making his decision, the ALJ noted that even though Plaintiff contends she has difficulty remembering and following instructions, concluded that Plaintiff has mild limitations in remembering or applying information because she is able to pay bills, read, and can perform simple maintenance. (*Id.*). Also, the ALJ found that Plaintiff has mild limitations interacting with others even though she has alleged she has difficulty engaging in social activities and getting along with others. (*Id.*). (Again, according to her statements she is able to shop in stores and live with others). (*Id.*). Though Plaintiff asserted that she has difficulty concentrating, avoiding distractions, and maintaining a regular work schedule, the ALJ found that Plaintiff has mild limitations regarding her ability to concentrate, persist, or maintain pace because she is able to drive, prepare simple meals, watch television, and manage funds. (Tr. 19). Finally, even though Plaintiff asserted she has difficulties handling change and managing her mood, the ALJ found that Plaintiff has only mild limitations in her ability to adapt or manage herself because she stated she is able to handle self-care, personal hygiene, and care for her pets. (*Id.*). The ALJ determined that because of Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant

numbers in the national economy that Plaintiff can perform and therefore has not been under a disability as defined in the Act since September 30, 2013. (Tr. 24).

## III.    Plaintiff's Argument for Remand or Reversal

Plaintiff contends that the ALJ failed to accord proper weight to Plaintiff's treating psychiatrist, Dr. Feist, and therefore the ALJ's decision was not based on substantial evidence. (Doc. #12 at 2). Plaintiff also contends the ALJ should have considered Dr. Feist's opinion because the Eleventh Circuit provides that the opinion of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary. (Doc. #12 at 18). And according to Plaintiff, by not considering the opinion of Dr. Feist, the ALJ relied on vocational expert testimony that was not based on correct (or full) statements of Plaintiff's limitations and impairments. (Doc. #12 at 21).

## IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.  DISCUSSION

For the reasons stated below, the court concludes the ALJ did not err in denying his findings or conclusions.

### A.    The ALJ Properly Evaluated the Medical Source Opinions

Plaintiff argues that the ALJ must clearly articulate reasons for giving less weight to the opinion of a treating physician -- in this case the opinion of Dr. Feist -- and his failure to do so is reversible error. (Doc. #12 at 18). The court disagrees. Plaintiff's argument appears to cite case law utilizing "old rules" for ALJ's evaluating medical evidence from Eleventh Circuit precedent. (Doc. #12 at 19). The court finds Plaintiff's argument does not demonstrate error under the new regulations. (Doc. #12 at 17-21).

In ruling on Plaintiff's application for benefits on August 15, 2017, the ALJ applied new Social Security regulations for evaluating medical evidence that became effective on March 27, 2017.[1] The new regulations now specify five categories of evidence: (1) objective medical evidence, (2) medical opinion, (3) other medical evidence, (4) evidence from nonmedical sources,

---

[1] The court notes that Plaintiff acknowledges in her brief that her "claim for SSDI and SSI on 8/15/17 with an onset of 9/30/13 … [t]herefore the New Medical Rules will apply." (Doc. #12 at 2).

and (5) prior administrative medical findings. *See* 20 C.F.R. §404.1513(a) (2020). Statements by a medical source reflecting judgments about a claimant's diagnosis and prognosis are not considered medical opinions because they do not necessarily provide perspectives about the claimant's functional abilities and limitations. 20 C.F.R. § 404.1513(a)(2), (3) (2020); *see* 81 Fed. Reg. at 62,562. For claims by adults on or after March 27, 2017, the regulations contain a more focused definition of medical opinion.[2] The regulations no longer use the term "treating source"; instead, they use the phrase "your medical source(s)" to refer to whichever medical sources a claimant chooses to use. *See* 20 C.F.R. §404.1520c (2020). The Commissioner chose not to retain the old "treating source rule" because healthcare delivery has changed in significant ways, and the agency's adjudicative experience has shown that the source of an opinion is no longer the most important factor for determining the persuasiveness of the opinion. (*Id*.). In evaluating claims filed on or after March 27, 2017, "the agency will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520(c)(a) (2020).

Further, the regulations governing claims filed on or after March 27, 2017, no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (*e.g.*, requirement that adjudicators must "give good reasons" for the weight given a treating source opinion). 20 C.F.R. § 404.1520(c)(b) (2020). Now, the ALJ focuses on the persuasiveness of the medical opinion(s) or prior administrative medical finding(s) using the following five factors: (1) supportability, (2) consistency, (3) relationship with the claimant (which

---

[2] A medical opinion is a statement from a medical source about what a claimant can still do despite impairment(s) and whether they have one or more impairment-related limitations or restrictions in the following abilities: (i) ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions such as reaching, handling, stooping, or crouching); (ii) ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting. 20 C.F.R. § 404.1513(a)(2) (2020).

includes length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship), (4) specialization, (5) other factors. *See* 20 C.F.R. § 404.1520(c)(a)-(c) (2020). An ALJ must explain how he considered the factors of supportability[3] and consistency.[4] The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors. (*Id*.). The ALJ may but is not required to explain how he considered the other remaining factors. 20 C.F.R. § 404.1520c(b)(3) (2020).

The court finds the ALJ properly evaluated Plaintiff's relevant medical evidence. The ALJ specifically referenced the November 2018 opinion from Dr. Feist. (Tr. 22).  Dr. Feist opined Plaintiff had totally disabling mental impairments since September 30, 2013, but the ALJ found his opinion was not persuasive because it was inconsistent with other evidence in the record and not consistent with Plaintiff's limited history of conservative treatment. (Tr. 22, 23, 453). The ALJ noted Plaintiff was initially receiving treatment at CED Mental Health in July of 2014, several months after her insured status expired. (Tr. 22, 723-25).  Further, in April 2013, Dr. Johnson opined Plaintiff reported doing "very well" on her anxiety medication and had a calm mood with no suicidal ideation. (Tr. 399-401). In June 2013, Dr. Johnson noted no psychiatric findings. (Tr. 403-04). In September 2013, Dr. Johnson again commented that Plaintiff was doing "very well with medication" and that she denied side-effects. (Tr. 406-08).

Thus, the court concludes that the ALJ evaluated the medical evidence properly under the new regulations.

---

[3] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his medical opinion(s) or a prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1) (2020).

[4] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2) (2020).

**B.**      **Whether the ALJ's Determination is Supported by Substantial Evidence**

Plaintiff next argues that the ALJ's determination that Plaintiff was not disabled because she retained the RFC to perform a list of jobs in the national economy was not supported by substantial evidence. (Doc. #12 at 21). Further, Plaintiff maintains that the Vocational Expert's testimony was not based on a correct or full statement of her limitations and impairments, thus constituting an improper hypothetical. (*Id.*). The court also finds these arguments unavailing.

As previously stated above, the ALJ evaluated the medical source opinions for the relevant period and found Dr. Feist's opinion to be both unpersuasive and inconsistent with the other medical evidence presented in the record, thus considering them irrelevant.[5] The ALJ is only required to include the limitations in the hypothetical question that are supported by the record. *See Welch v. Bowen*, 854 F.2d 435, 440 (11th Cir. 1986); *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1986).

On May 17, 2017, Plaintiff was seen by a CED Mental Health therapist who found Plaintiff had good insight/judgment, logical thought processes, and adequate attention/concentration. (Tr. 354). In October 2017, Plaintiff followed up with the therapist who found she had severe depression, although she was taking her medication daily. (Tr. 709). Then, on December 27, 2017, Dr. Arnold found Plaintiff had been non-compliant with her medication for one month and had an anxious mood, but normal cognitive functioning/thought processing. (Tr. 361, 362). On June 4, 2018, another CED Mental Health therapist found Plaintiff had good insight, normal thought processes, adequate function, and fair judgement. (Tr. 705-06). On November 13, 2018, during the same month Dr. Feist had indicated Plaintiff had disabling mental limitations, a CED therapist

---

[5] The regulations governing claims filed on or after March 27, 2017 no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (*e.g.*, requirement that adjudicators must "give good reasons" for the weight given a treating source opinion). 20 C.F.R. § 404.1520(c)(b) (2020).

found Plaintiff had logical thought process, normal thought content, adequate attention, and fair insight/judgement. (Tr. 703-04). Plaintiff was seen again at CED Mental Health on May 9, 2019, and Dr. Johnson found Plaintiff was depressed, had limited insight, and auditory hallucinations/delusions. (Tr. 736, 737). On June 19, 2019, Dr. Feist restarted Plaintiff on psychiatric medication of which she asserted she experienced no medication side effects. (Tr. 734, 735).

Given this record evidence, it was reasonable for the ALJ to not consider the opinion of Dr. Feist because it was inconsistent with other medical findings established in the record, thus it was unnecessary to present that information to the Vocational Expert. That is, the ALJ's decision was supported by substantial evidence.

## VI.  Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed.  A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this July 22, 2021.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE